The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William Bost and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Decision and Order and enters the following Decision and Order.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. This accident occurred on 11 June 1993.
2. David Ingold consumed some alcoholic beverage within 24 hours of this accident.
3. David Ingold had used prescription allergy drugs within twelve hours of this accident but said it did not make him drowsy.
4. David Ingold saw what he thought was an undetermined number of children along the roadway on the left side of the road prior to his approach to the accident scene.
5. David Ingold's truck contacted Rachel Harris's body on the left-hand side of his truck; and he swerved to the right at the time of impact.
6. Rachel Harris sustained an injury by accident on 11 June 1993.
7. The area where the accident occurred had heavy traffic at the time of the accident.
8. Rachel Harris was seven years old at the time of this accident, having been born on 30 March 1986.
***********
The Full Commission finds facts as follows:
 FINDINGS OF FACT
1. On 11 June 1993, the last day of the school year in Orange County, Larry David Ingold was employed by the Orange County Board of Education as a school bus mechanic. At or about 7:00 a.m. that morning, he was informed by the Orange County Director of Transportation, Jerry Faulk, that a school bus had broken down and he was directed to proceed to the location of the bus to make repairs. He was acting within the course and scope of his employment when he drove the pick-up truck involved in the accident.
2. Ingold left the school bus garage and proceeded north on North Carolina Highway 86 from Hillsborough toward Yanceyville driving a 1990 Chevrolet pickup truck, which was a school transportation service vehicle within the meaning of N.C. Gen. Stat. § 143-300.1.
3. At a point approximately three to four miles north of Hillsborough on Highway 86, Cassandra Poteat lived in an apartment complex on the eastern side of Highway 86 with her older son, Titus, a young son, Tyrone, and a young daughter, Rachel Harris. On the morning of the accident, Titus was at the bus stop on the east side of Highway 86 with his younger brother and sister; but at such time that Titus's bus came, he left his brother and sister at the stop as he departed for school.
4. Cassandra Poteat is Rachel Harris's mother. Previously, she had made it a habit to go out with her children to the school bus stop but had recently changed her routine by turning Rachel over to a thirteen year old girl, also named Cassandra, for purposes of watching her at the bus stop. Prior to the accident date, Ms. Poteat had no difficulty with Cassandra's looking after her daughter, Rachel Harris.
On the morning in question, after her children departed, Ms. Poteat stayed in her apartment for purposes of taking a bath preceding a job interview. Right before Ms. Poteat began her bath, she looked out her apartment window and saw Rachel Harris on the side of Highway 86 across from the school bus stop
Prior to the accident, Ms. Poteat taught Rachel to look both ways before crossing any street. Ms. Poteat testified that she was aware that in Rachel's school classes that she was taught to look both ways before crossing a street and that this had occurred ever since she was in public school. That Rachel had been taught about crossing the streets from age three when she started Head Start in New Jersey. That Ms. Poteat herself was a Head Start volunteer and witnessed Rachel's being trained in the safe way to cross the street. Finally, Ms. Poteat testified that if Rachel had crossed Highway 86 without looking both ways before crossing that this would have been contrary to what Rachel had been previously taught by her mother in regards to crossing a highway.
7. Rachel testified that beginning in Head Start, in kindergarten, and in first grade, that she had training in school about stopping and looking both ways before crossing the road. That this teaching as to crossing the road was reinforced in Rachel by her mother's teaching. Rachel testified that at the time of the accident she considered it unsafe to cross the street without looking both ways because she could get hit by a vehicle. Rachel testified that on the date of the accident it was her personal opinion that if she crossed the street without looking that she would get hit. There is no evidence of record that Rachel Harris was contributorily negligent or failed to look both ways before crossing the street.
8. Michael Warren, the current Director of Transportation for Orange County Schools, testified that he was familiar with the accident site and did not consider it an area where there had been previous school bus accidents but considered it a highly traveled area. Mr. Ingold testified that in his eleven years with Orange County Schools, he had never known an accident to occur at the site in question. Mr. Warren could not speculate as to why his predecessor, Mr. Faulk, indicated on an internal Orange County Board of Education report of this matter that this was a dangerous area. Jerry Faulk was an employee of the defendant and was acting within the scope his employment when he ordered Mr. Ingold to go repair the broken bus and when he completed the accident report.
9. As Mr. Ingold approached the hill near the accident site, he noticed some children on the left side of the road. This should have been a clear warning that these children were in a place of danger. Mr. Ingold did not slow his truck in response to seeing the children. The posted speed limit at the site of the accident was 55 mph. Mr. Ingold testified that at the time he noticed Rachel Harris, he was traveling at a speed somewhere between 50 and 60 mph. At the time of the accident, Mr. Ingold was running with the flow of traffic. Mr. Ingold testified that due to heavy traffic, he was paying more attention to the road and traffic than the children awaiting the school bus. Further, Mr. Ingold testified that he kept eye contact with the driver of the oncoming car. Moments later, Rachel Harris in her attempt to cross the street, was hit by Mr. Ingold. The Full Commission finds that Mr. Ingold negligently failed to keep a proper lookout and failed to exercise that degree of care that a reasonable person would have exercised in the same or similar circumstances. The Full Commission further finds that such negligence was the proximate result of the injuries suffered by Rachel Harris.
10. Mr. Ingold, by braking and steering his truck to the right, did hit Rachel Harris but did not run over her body. Mr. Ingold's truck carried the body of Rachel Harris off to the right side of the road in a graveled area near a wooden sign where the vehicle came to rest. Rachel Harris sustained broken legs, cuts, bruises, and some scarring as a result of the accident.
11. Rachel Harris was hit in the northward lane of travel on Highway 86 after Mr. Ingold braked his truck. He locked his brakes and was moving toward his right to try to miss the child. Mr. Ingold failed to exercise due care by not maintaining a proper lookout. He should have slowed his vehicle immediately upon seeing the children standing by the side of the busy road and should have approached them at a speed that would have enabled him to stop before striking one of the children.
12. N.C. Gen. Stat. § 20-174(e) provides, in pertinent part: "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."
13. The facts of this case are distinguishable from "dart out" cases in that the driver of the vehicle that struck the child was aware of her presence at the side of the highway apparently waiting for a school bus on the last day of school. Had he exercised due care he would have been able to have avoided the accident.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. There was negligence on the part of Mr. Ingold, an agent of the School Board, while acting within the scope of his office, employment, service, agency or authority which proximately caused plaintiff an injury, and plaintiff is entitled to damages. The plaintiff's injuries herein were occasioned by the negligence of the defendant's driver in approaching the plaintiff and the other children standing next to the busy highway without that high degree of care and caution engendered by the circumstances. Brownv. Board of Education, 269 N.C. 667, 153 S.E.2d 335(1967)
Evidence of a violation of N.C. Gen. Stat. § 20-174 (e) does not constitute negligence per se, but rather is some proof of negligence. Troy v. Todd, 68 N.C. App. 63, 313 S.E.2d 896
(1984). Mr. Ingold's testimony demonstrates that he saw plaintiff prior to the time she entered the road and again while she was in the road before hitting her. Accordingly, Mr. Ingold was in violation of subsection (e) of the statute. Additionally, his failure to exercise reasonable care under the circumstances constitutes negligence which was the proximate cause of the injuries sustained. N.C. Gen. Stat. § 143-291.
3. Defendants have failed to demonstrate that Rachel Harris was contributorily negligent. Additionally, a seven year old child is presumed to be incapable of contributory negligence.Mitchell v. Board of Education, 1 N.C. App. 373, 161 S.E.2d 645
(1968). N.C. Gen. Stat. § 143-291.
4. Cassandra Poteat, mother of Rachel Harris, is entitled to damages to be paid by defendant for medical and care expenses incurred as a result of the accident and ensuing period of recovery.
5. Cassandra Poteat and Donald R. Soule, as Guardians Ad Litem for Rachel Deanna Harris, Minor, are entitled to damages for the injuries, including pain and suffering, incurred by the minor Rachel Deanna Harris.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. This matter is remanded to the Deputy Commissioner division of the Industrial Commission for hearing and determination of the damages due to be paid by Defendant to Cassandra Poteat as mother of Rachel Harris and to Cassandra Poteat and Donald R. Soule as Guardians Ad Litem for Rachel Harris.
2. Defendants shall pay the costs of this action.
This the 16th day of February 1999.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
S/_____________ BERNADINE S. BALLANCE COMMISSIONER